UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. |
| EIGHTY-EIGHT THOUSAND, TWO HUNDRED SIXTY-SEVEN DOLLARS ($88,267.00) U.S. CURRENCY, | ) ) ) ) ) |
| Defendant. | ) |

## VERIFIED COMPLAINT OF FORFEITURE

Comes now plaintiff, United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Julia M. Wright, Assistant United States Attorney, for said district, and in a civil cause of action for forfeiture respectfully states as follows:

1. In this *in rem* civil action the United States seeks forfeiture of certain property, currently in the possession and custody of the plaintiff pursuant to the provisions of Title 21, United States Code, Section 881.

2. Subject Matter Jurisdiction of this Court is based on Title 28, United States Code, Sections 1345, 1355(a), and Title 21, United States Code, Section 881. *In rem* jurisdiction is based on Title 28, United States Code, Section 1355. Venue is proper in this district pursuant to Title 28, United States Code, Sections 1355 & 1395 and Title 21, United States Code, Section 881(j).

3. The defendant property was furnished or intended to be furnished in exchange for controlled substances in violation of the Controlled Substances Act, Title 21, United States Code, Section 801 *et seq.*, was proceeds traceable to such an exchange, and was used or intended to be used to facilitate such an exchange. The defendant property is therefore subject to forfeiture to the United States of America, under the provisions of Title 21, United States Code, Section 881(a)(6).

4. The defendant property was seized in the Eastern District of Missouri and is now, and during the pendency of this action will be in the jurisdiction of this court.

5. On or about October 9, 2012, the defendant currency ($88,267.00) was seized from Eyton Senders by the St. Charles County Sheriff's Department. On October 30, 2012, the Drug Enforcement Administration adopted the seizure pursuant to an Order of Transfer from the Circuit Court of St. Charles County, Missouri. The plaintiff alleges the defendant property is subject to forfeiture and for its reasons states as follows:

6. On or about October 9, 2012, a St. Charles County Sheriff's Department Deputy conducted a vehicle stop of a 2013 Ford Taurus with Nevada license plates on Interstate 70 with the Eastern District of Missouri for traffic violations. The deputy approached the vehicle and made contact with the driver, who was later identified as Eyton Senders. While speaking with Senders, the deputy could detect the odor of marijuana emitting from within the vehicle. Senders advised the officer he was traveling to Los Angeles, California to visit friends. When asked about who owned the vehicle, the deputy learned that it was rented by a third party, and that Senders was not on the rental agreement.

7. Senders became increasingly nervous as he spoke with the officer, and began looking all around the vehicle. The deputy feared Senders may attempt to flee the scene, and asked Senders to step to the rear of the vehicle while he completed a check of Senders license and vehicle registration. The deputy asked Senders if there were any drugs in the vehicle, to which Senders stated, "Not that I know of." The deputy asked Senders if there were any large amounts of currency, to which Senders stated, "I wish, I have $300 for gas." Due to the totality of the circumstances, the officer asked Senders for consent to search the vehicle. Senders advised that he didn't believe a search was necessary.

8. Another deputy officer arrived on the scene to assist in the stop. The officer deployed his drug-detecting canine to conduct an open-air search around the vehicle. The canine gave a positive alert for a narcotic odor on the trunk seam and right side wheel-well of the vehicle. At that time, the officer explained to Senders that he was going to conduct a probable cause search due to the odor of marijuana coming from the vehicle and the positive alert by the drug-detecting canine. At that time Senders made a spontaneous statement, telling officers, "I got $75,000.00 in the trunk; can the dog really smell that?"

9. The deputy informed Senders of his Miranda rights, to which he stated he understood and agreed to speak with officers. Senders stated, "It's just money; you can't arrest me, right?" Upon being asked, Senders told officers he had gotten the money from a Bank of America in California. The officers then opened the trunk and located a book bag that contained large bundles of U.S. Currency that were wrapped in colored rubber bands in what looked to be $5,000 increments, and appeared to consist of mostly small denominations. The money smelled strongly of marijuana, and there appeared to be trace amounts of marijuana in the bag. The officers told

Senders that money doesn't come from a bank in the way it was packaged. Senders put his head down and shook his head up and down. Senders was advised the Drug Enforcement Administration was going to respond to continue the interview, and Senders and his vehicle were transported from the shoulder of the highway to Superior Towing to be off the side of the highway.

10. At the shop, Senders became overly aggressive, and was asked to sit in a chair. Senders was handcuffed in front, and continually had to be told to sit back in the chair. Senders stated, "Just kill me with your gun; I'm in big trouble." The deputies were able to calm Senders and speak with him further. The deputies inquired about the money, to which Senders stated he received the money from his uncle, who he wouldn't identify. He stated he received a wire transfer in California and has been carrying bulk currency in the trunk. He told the deputies he took the money to Denver and Chicago, and it never left his possession.

11. Investigators with the Drug Enforcement Administration (DEA) arrived on the scene to assist. The investigators confirmed Senders was read his Miranda rights, and asked Senders to speak with them, to which he agreed. Senders restated his claim that the money had come from his uncle. Senders further stated to one of the investigators, "Please just shoot me, I'm better off dead." Investigators asked why Senders would say that, to which he stated, "I'm in trouble. I'm very scared of them sir."

12. Continuing with the interview, Senders stated to investigators, "I'm the money guy." Senders explained he just transports currency and never touches the drugs. Senders advised the DEA investigators that his original story that the currency had been given to him by his uncle was a cover story. He further stated his uncle was very wealthy and could get him out of trouble.

4

Investigators asked Senders to be completely honest with them, and Senders paused and appeared to be thinking. Another investigator advised that the sheriff's department was going to seize two cellular telephones Senders was traveling with. Senders began shaking his head up and down, and stated, "Ok. I'll tell you the truth."

13. Senders told investigators that he flew to California to pick up marijuana for a subject that resides in Ohio. Once in California, Senders advised he picked up a rental car arranged by the subject who lives in Ohio. Senders stated he met with a subject that "runs northern Cali," and received 20 pounds of marijuana. Senders then drove to Ohio and met with a friend, and exchanged the marijuana for a large bundle of currency. Senders was not clear on the total amount of currency he was carrying. He stated he was to receive $500 per pound that he delivered. Several times during the conversation Senders changed the sum of currency, finally stating it was $79,000.00. Senders would not reveal the identities of the subjects in California or Ohio for fear of his safety. The individuals identified on the rental agreement were Jessica Bilson, with Kamal Boarman as an authorized drivers.

14. The only person known to have a possible interest in the defendant property is Eyton Senders.

15. By reason of these premises, the defendant property is subject to forfeiture to the United States, pursuant to the provisions of Title 21, United States Code, Section 881.

WHEREFORE, Plaintiff prays that a Warrant for Arrest be issued for the defendant property and the defendant property be condemned and forfeited to the United States of America,

in accordance with the provisions of law; and that the plaintiff be awarded its costs in this action, and have such other relief as provided by law and the nature of the case may require.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney


*/s/ Julia M. Wright*
JULIA M. WRIGHT, #38928MO
Assistant United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200

## VERIFICATION

I, Special Agent Sean Kassouf, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Drug Enforcement Administration, that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Drug Enforcement Administration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 3/12/13
(date)

_____
SEAN KASSOUF
Special Agent
Drug Enforcement Administration